## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (Camden Vicinage)

|  |  |
|---|---|
| AUTOMOTIVE RENTALS, INC. and ARI FLEET LT, <br><br> *Plaintiffs*, <br><br> v. <br><br> REDBOX AUTOMATED RETAIL LLC, and CHICKEN SOUP FOR THE SOUL ENTERTAINMENT INC., <br><br> *Defendants*. | Civil Action No. 1:24-CV-05901-CPO-SAK |

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND WRIT OF REPLEVIN

**REED SMITH LLP**
506 Carnegie Center
Suite 300
Princeton, NJ 08540
Tel. (609) 987-0050

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................. 3

LEGAL STANDARD ............................................................................................ 4

I.      Elements Required for Preliminary Injunctive Relief ................................... 4

II.     Burden of Persuasion ................................................................................ 5

ARGUMENT ......................................................................................................... 6

I.      Plaintiffs Can Be Compensated by Money Damages ..................................... 6

      A.      The Record Establishes that Any Injury Is Monetary, Precluding
           Irreparable Harm .............................................................................. 6

           1.      Irreparable harm is indispensable, and cannot be economic in
                 nature................................................................................. 6

           2.      Plaintiffs' injury is monetary in nature, despite their effort to
                 mislabel it .......................................................................... 7

           3.      All other relevant factors weigh against a finding of irreparable
                 harm here .......................................................................... 9

      B.      Plaintiffs' Conclusory Arguments in Favor of Irreparable Harm Are
           Meritless .......................................................................................... 11

           1.      Every case cited by Plaintiffs is distinguishable, inapplicable, or
                 both .................................................................................. 11

            2.      Plaintiffs deceptively misrepresent the intended relief as preserving
                 the status quo, when the injunction would radically change the
                 status quo ........................................................................... 13

      C.      In Sum, Plaintiffs Can—and Will—Be Made Whole Monetarily ....................... 15

II.     The Balance of Equities and Public Interest Strongly Favor Denying the Motion,
      Because It Will Cause Grave and Far-Reaching Harm if Granted ................... 16

III.    Plaintiffs Are Not Entitled to Replevin under New Jersey Law ....................... 18

IV.     The Significant Bond Required Further Counsels Against Granting the Motion............ 19

CONCLUSION.................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acierno v. New Castle County*,
  40 F.3d 645 (3d Cir. 1994)...........................................................................7, 11, 13

*Afran v. McGreevey*,
  336 F.Supp.2d 404 (D.N.J. 2004) ............................................................................5

*Atlantic Coast Demolition & Recycling v. Board of Chosen Freeholders*,
  893 F.Supp. 301 (D.N.J. 1995) .........................................................................14, 15

*Autobar Sys. of N.J. v. Berg Liquor Sys., LLC*,
  No. 23-3790 (MAS) (JBD), 2024 U.S. Dist. LEXIS 37692 (D.N.J. Mar. 4,
  2024) ........................................................................................................................5

*Bennington Foods LLC v. St. Croix Renaissance Group, LLP*,
  528 F.3d 176 (3d Cir. 2008)..............................................................................6, 11, 13

*Black Mt. Equities, Inc. v. Pac. Gold Corp.*,
  No. 2:12-CV-01285 (KM)(CLW), 2012 U.S. Dist. LEXIS 169295 (D.N.J.
  Nov. 27, 2012) ....................................................................................................9, 11, 15

*Campbell Soup Co. v. ConAgra, Inc.*,
  977 F.2d 86 (3d Cir. 1992)........................................................................................6

*Conestoga Wood Specialties Corp. v. Sec'y of the United States HHS*,
  No. 13-1144, 2013 U.S. App. LEXIS 2706 (3d Cir. Feb. 8, 2013) ..........................5

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*,
  24 F.4th 242 (3d Cir. 2022) ....................................................................................18

*Donlow v. Garfield Park Acad.*,
  No. 09-6248, 2010 U.S. Dist. LEXIS 32384 (D.N.J. Apr. 1, 2010) .........................6

*Dorsey v. Black Pearl Books*,
  No. 06-2940 (JAG), 2006 U.S. Dist. LEXIS 83093 (D.N.J. Nov. 14, 2006) ...................14, 16

*ECRI v. McGraw-Hill, Inc.*,
  809 F.2d 223 (3d Cir. 1987)...........................................................................4, 6, 7, 10

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
  765 F.3d 205 (3d Cir. 2014)......................................................................................4

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
  882 F.2d 797 (3d Cir. 1989).................................................................................7, 15

*Int'l Foodsource, LLC v. Grower Direct Nut Co.*,
    No. 16-cv-3140 (WHW)(CLW), 2016 U.S. Dist. LEXIS 102214 (D.N.J. Aug.
    3, 2016) .......................................................................................................................4

*Isr. Disc. Bank of N.Y. v. H.N. Int'l Group, Inc.*,
    No. 16-6258-BRM-LHG, 2016 U.S. Dist. LEXIS 142444 (D.N.J. Oct. 14,
    2016) ................................................................................................................ *passim*

*Laidlaw, Inc. v. Student Transp. of Am.*,
    20 F.Supp.2d 727 (D.N.J. 1998) ...............................................................................6

*Longo v. Env'tl Prot. & Improvement Co.*,
    No. 2:16-cv-09114 (JLL) (JAD), 2017 U.S. Dist. LEXIS 85681 (D.N.J. June
    5, 2017) .....................................................................................................................10

*Marsellis-Warner Corp. v. Rabens*,
    51 F.Supp.2d 508 (D.N.J. 1999) ...............................................................................7

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ..................................................................................................5

*NAACP v. N. Hudson Reg'l Fire & Rescue*,
    707 F.Supp.2d 520 (D.N.J. 2010) ...........................................................................16

*Newton AC/DC Fund L.P. v. Dao*,
    No. 24-722 (RK) (JBD), 2024 U.S. Dist. LEXIS 24788 (D.N.J. Feb. 13, 2024) ........11, 12, 15

*Nutrasweet Co. v. Vit-Mar Enters. Inc.*,
    176 F.3d 151 (3d Cir. 1999)......................................................................................4

*Oxford House, Inc. v. Twp. of N. Bergen*,
    No. 22-2336, 2023 U.S. App. LEXIS 19421 (3d Cir. July 28, 2023)........................5

*Peoplestrategy, Inc. v. Lively Emplr. Servs.*,
    No. 3:20-cv-02640-BRM-DEA, 2020 U.S. Dist. LEXIS 171475 .........................19

*Peterson v. HVM LLC*,
    No. 14-1137 (KM)(SCM), 2015 U.S. Dist. LEXIS 75424 (D.N.J. June 11,
    2015) ..........................................................................................................................8

*Piper v. Gooding & Co., Inc.*,
    334 F.Supp.3d 1009 (D. Ariz. 2018) ................................................................8, 11

*Punnett v. Carter*,
    621 F.2d 578 (3d Cir. 1980).......................................................................................5

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017).....................................................................................16

*Scanvec Amiable Ltd. v. Chang*,
    80 F. App'x 171 (3d Cir. 2003) ...................................................................19

*Smart Vent Prods. v. Crawl Space Door Sys.*,
    No. 13-5691, 2016 U.S. Dist. LEXIS 108052 (D.N.J. Aug. 15, 2016) ...................................10

*Smith v. Biden*,
    No. 1:21-cv-19457, 2021 U.S. Dist. LEXIS 215437 (D.N.J. Nov. 8, 2021)
    (O'Hearn, J.) .................................................................................7

*Stryker Corp. v. Hagag*,
    No. 21-12499 (ES) (CLW), 2022 U.S. Dist. LEXIS 139226 (D.N.J. June 30,
    2022) ........................................................................................10

*Tannenbaum v. Refocus Eye Health of Cent. Conn., P.C.*,
    2024 U.S. Dist. LEXIS 29807 (D.N.J. Feb. 21, 2024) ..........................................9

*Tracey v. Recovco Mortg. Mgmt. LLC*,
    451 F.Supp.3d 337 (D.N.J. 2020) ..................................................5, 6, 8, 16

*Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*,
    655 F.Supp.2d 581 (W.D. Pa. 2009) ...............................................................5

*United Steelworkers v. Fort Pitt Steel Casting*,
    598 F.2d 1273 (3d Cir. 1979) .....................................................................12

*Van Horn, Metz & Co. Inc. v. Crisafulli*,
    No. 21-1128, 2021 U.S. Dist. LEXIS 182039 (D.N.J. Sept. 23, 2021) ...................................12

*VW Credit, Inc. v. CTE2, LLC*,
    No. 2:19-CV-19523-CCC-ESK, 2019 U.S. Dist. LEXIS 210548 (D.N.J. Dec.
    6, 2019) ......................................................................................19

*Westchester Fire Ins. Co. v. Global Real Constr., LLC*,
    No. 09-207 (JLL), 2009 U.S. Dist. LEXIS 3481 (D.N.J. Jan. 16, 2009) .................................6

*Yamaha Motor Fin. Cop., U.S.A. v. ML Country Club LLC*,
    No. 1: 20-cv-04696-NLH-JS, 2020 U.S. Dist. LEXIS 234232 (D.N.J. Dec. 14,
    2020) ........................................................................................18

**Rules**

Fed. R. Civ. P. 65(b) ..............................................................................5

Fed. R. Evid. 408 ..............................................................................15, 16

Defendants Redbox Automated Retail, LLC ("Redbox") and Chicken Soup for the Soul Entertainment, Inc. ("CSSE") (collectively, "Defendants") respectfully submit this Memorandum of Law, along with the accompanying Affidavit of William J. Rouhana, dated May 19, 2024 (the "Rouhana Aff."), in opposition to plaintiffs Automotive Rentals, Inc.'s and ARI Fleet LT's (collectively, "Plaintiffs") motion for temporary restraining order ("TRO"), preliminary injunction, and writ of replevin (the "Motion").

## PRELIMINARY STATEMENT

The Motion fails because Plaintiffs cannot answer the dispositive question here: why are they entitled to an emergency mandatory injunction, right now, in support of a monetary claim based on breach of contract?  They are not.  Multiple conditions for preliminary injunctive relief are absent here, but those omissions share a common theme: the freezing and turnover orders that Plaintiffs seek are simply not justified at this early stage.  The Court has ample reason to deny the Motion and the requested relief: (a) there is no risk whatsoever of irreparable harm; (b) it would do far more harm than good; (c) it would significantly disturb the status quo; and above all (d) it is precluded by controlling law, since Plaintiffs can be made whole by money damages.

This case arises from a lease agreement whereby Defendants leased approximately 400 vehicles from Plaintiffs.  Redbox's employees use the vehicles to replenish, service, and maintain the thousands of Redbox video rental kiosks across the country.  The leased vehicles are indispensable to Redbox's continued business operations: Redbox cannot operate without the hundreds of vehicles it has leased from Plaintiffs.  Without being able to use the leased vehicles, Redbox and its employees will be left unable to service the physical kiosks, resulting in significant harm to Redbox that far exceeds the financial amount in controversy alleged by Plaintiffs here.   If Defendants were to lose use of the vehicles at this juncture, Redbox would be compelled to terminate hundreds of jobs and would be put out of business.  This, in turn, has significant

implications for CSSE, which owns Redbox and its related entities, and has guaranteed Redbox's obligations under the lease agreement.  In short, the vehicles are essential to both Defendants. Given the vehicles' importance, Defendants have no intention of selling, disposing, or alienating the vehicles.  They are not going anywhere during the pendency of this action and thus Plaintiffs' claims of irreparable harm are simply not true.  There is no need for emergency relief, and granting such relief abruptly and prematurely would cause crippling harm to Defendants.  Thus, the balance of equities and public interest falls in favor of Defendants.

Despite these facts, Plaintiffs have improperly sought emergency injunctive relief based on a purely monetary theory.  Plaintiffs seek a TRO forbidding any use of the vehicles, followed by a preliminary injunction and writ of replevin turning the vehicles over to Plaintiffs.  But try as they might, Plaintiffs cannot avoid the fact that this case is fundamentally about the money Plaintiffs believe they are owed under the lease agreement.  In other words, Plaintiffs' basis for the action is that Defendants have missed payments under the lease agreement, a purely monetary harm. Plaintiffs suggest that the vehicles are losing value as Defendants continue to operate them, but this too can easily be compensated by a damages award at the conclusion of the lawsuit Plaintiffs have filed against Defendants.  Indeed, the vehicles themselves are not unique or irreplaceable, so even if the vehicles had to be replaced entirely for some reason, a damages award would be a sufficient remedy.  The law in this Circuit unequivocally provides that preliminary injunctions are not available in the circumstances presented here.

It is not in dispute that Defendants have been unable to make several monthly payments for the vehicles under the parties' lease agreement.  Consequently, Plaintiffs will likely prevail at least in part at trial.  But Plaintiffs are not entitled to sweeping preliminary injunctive relief based on an injury that is monetary in nature and not irreparable.  Irrespective of the final outcome of

this action, the question presently before the Court is whether Plaintiffs have carried their heavy burden to show that emergency injunctive relief is necessary <u>now</u>.  They have not done so, and the Motion should be denied.

## **FACTUAL BACKGROUND**

Redbox is an entertainment company, which together with other Redbox corporate affiliates, operates the Redbox brand: a chain of self-service video rental kiosks, with approximately 27,000 locations across the country.  Rouhana Aff. ¶ 4.  CSSE indirectly owns Redbox, following an August 2022 acquisition.  *Id.* ¶ 5.  Redbox's video rental operations generate significant cash income for Redbox, which indirectly benefits CSSE as well.  *Id.*

Plaintiffs are vehicle leasing companies.  Rouhana Aff. ¶ 6.  Plaintiffs and Redbox are parties to a Lease and Fleet Management Agreement dated February 24, 2017, and subsequently amended from time to time (the "Lease Agreement").  *See* Rouhana Aff. ¶ 7; *see also* Dkt. 1-1 (copy of Lease Agreement).  On October 14, 2022, CSSE executed a guaranty agreement in favor of Plaintiffs, guaranteeing all of Redbox's obligations to Plaintiffs under the Lease Agreement (the "Guaranty").  *Id.* ¶ 8; *see also* Dkt. 1-2 (copy of Guaranty).

Pursuant to the Lease Agreement, as well as the individual Motor Vehicle Lease Agreements related thereto, Plaintiffs lease approximately 418 vehicles to Redbox (the "Vehicles").  Rouhana Aff. ¶ 7.  Redbox has continued to possess and use the Vehicles at all times relevant to this Motion.  *Id.*  The Vehicles are ordinary and commonplace vehicles of various familiar makes and models, such as a Toyota Prius, Nissan Altima, or Subaru Forester.  Rouhana Aff. ¶ 17; *see also* Dkt. 1-5 at p. 12-20 (tables identifying each Vehicle at issue).  Redbox uses the Vehicles to maintain, restock, and otherwise service its approximately 27,000 kiosks.  *Id.* ¶ 13.  Consequently, the continued use of the Vehicles is essential to Redbox's ability to continue its day-to-day operations: if Redbox abruptly lost possession of the Vehicles, it would be unable to

operate its kiosks and its business would almost immediately grind to a halt. *Id.* ¶¶ 14-15. Given its corporate ownership of Redbox, CSSE would be prejudiced as well. *Id.* ¶¶ 5, 16.

CSSE has publicly acknowledged in recent months that it has struggled to access sufficient cash flow to meet its obligations. Rouhana Aff. ¶ 9. CSSE, and Redbox, have been unable to meet all of their obligations during this period. *Id.* In particular, Redbox has been unable to make several payments to Plaintiffs required by the Lease Agreement, which CSSE has guaranteed. *Id.* ¶ 10. Those defaults are the basis for Plaintiffs' correspondence demanding payments and asserting rights under the Lease Agreement (Dkt. 1-3 through 1-6) and for this action. Defendants do not dispute the existence of default, although the parties do not agree on the exact amount owed. Rouhana Aff. ¶ 10.

Plaintiffs filed the instant action on May 7, 2024. *See* Dkt. 1 (Complaint). The same day, Plaintiffs filed the Motion, seeking a temporary restraining order, preliminary injunction, and writ of replevin. *See* Dkt. 2 ("Moving Br.").

## LEGAL STANDARD

### I.   Elements Required for Preliminary Injunctive Relief

A party seeking preliminary injunctive relief must establish the following elements: (1) reasonable probability of success on the merits; (2) irreparable injury to the movant if relief is denied; (3) a balance of the equities favoring relief; and (4) vindication of the public interest. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Failure to establish any element requires denial of the injunction. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Nutrasweet Co. v. Vit-Mar Enters. Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

The availability of a temporary restraining order is governed by the same substantive elements as a preliminary injunction. *Int'l Foodsource, LLC v. Grower Direct Nut Co.*, No. 16-cv-3140 (WHW)(CLW), 2016 U.S. Dist. LEXIS 102214, at *20 (D.N.J. Aug. 3, 2016) (quoting

*Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F.Supp.2d 581, 588 (W.D. Pa. 2009)).  The criterion distinguishing a TRO is that a TRO is limited to preserving the status quo in the period before a preliminary injunction hearing can be held, if it appears that irreparable harm will occur in that period if not enjoined.  *Id.*; Fed. R. Civ. P. 65(b).

While a preliminary injunction requires consideration of the merits, the issue of whether interim relief is appropriate is distinct from whether the movant will ultimately prevail.  *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).  In fact, preliminary relief that would effectively grant the ultimate relief the plaintiff seeks at trial is disfavored.  *Id.*; *Afran v. McGreevey*, 336 F.Supp.2d 404, 407 (D.N.J. 2004).

## II.      Burden of Persuasion

On a motion for preliminary relief, the movant bears the burden of persuasion: it must establish each of the above elements "*by a clear showing*[.]"  *Oxford House, Inc. v. Twp. of N. Bergen*, No. 22-2336, 2023 U.S. App. LEXIS 19421, at *6 (3d Cir. July 28, 2023) (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  Even where the plaintiff has filed a verified complaint, she must support her motion for preliminary injunctive relief with specific evidence and substantive legal argument: mere allegations and conclusory assertions of law do not suffice.  *Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F.Supp.3d 337, 342 (D.N.J. 2020).

Courts frequently admonish parties that a preliminary injunction is "an extraordinary and drastic remedy[.]"  *Oxford House*, 2023 U.S. App. LEXIS 19421, at *6 (quoting *Mazurek*, 520 U.S. at 972).  Preliminary injunction motions are "rarely granted, because . . . the bar is set particularly high."  *Autobar Sys. of N.J. v. Berg Liquor Sys., LLC*, No. 23-3790 (MAS) (JBD), 2024 U.S. Dist. LEXIS 37692, at *6 (D.N.J. Mar. 4, 2024) (quoting *Conestoga Wood Specialties Corp. v. Sec'y of the United States HHS*, No. 13-1144, 2013 U.S. App. LEXIS 2706 (3d Cir. Feb.

8, 2013)).   A temporary restraining order, even more so, is considered an "extreme remedy." *Westchester Fire Ins. Co. v. Global Real Constr., LLC*, No. 09-207 (JLL), 2009 U.S. Dist. LEXIS 3481, at *8 (D.N.J. Jan. 16, 2009).

Mandatory injunctive relief, commanding a party to take an affirmative action as opposed to refraining from action, which alters the status quo, requires a still higher burden.  *See Tracey*, 451 F.Supp.3d at 344 (quoting *Bennington Foods LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008)).   Specifically, a greater degree of irreparable harm must be shown in order to justify relief.  *Bennington*, 528 F.3d at 179.

## ARGUMENT

### I.   Plaintiffs Can Be Compensated by Money Damages

Above all, the Motion fails because Plaintiffs have not asserted, let alone proven, any injury that cannot be compensated by money damages.   Their injuries are quintessentially economic in nature, can be compensated by damages, and therefore cannot support irreparable harm as a matter of law.   That, by itself, is fatal to the Motion.

### A.   The Record Establishes that Any Injury Is Monetary, Precluding Irreparable Harm

#### 1.   Irreparable harm is indispensable, and cannot be economic in nature

Irreparable harm is often said to be the single most important prerequisite for issuing a preliminary injunction.  *See*, *e.g.*, *Donlow v. Garfield Park Acad.*, No. 09-6248, 2010 U.S. Dist. LEXIS 32384, at *4 (D.N.J. Apr. 1, 2010).   A mere <u>risk</u> of irreparable harm is not enough. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (quoting *ECRI*, 809 F.2d at 226).   The injury complained of cannot be "possible, speculative, or remote."  *Laidlaw, Inc. v. Student Transp. of Am.*, 20 F.Supp.2d 727, 766 (D.N.J. 1998).   Moreover, the harm must be

literally irreparable by subsequent relief, not simply serious in nature, or difficult to measure. *Id.*; *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994).

The following black-letter rule, as recently stated by this Court, disposes of this Motion: irreparable harm is defined as "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Smith v. Biden*, No. 1:21-cv-19457, 2021 U.S. Dist. LEXIS 215437, at *24 (D.N.J. Nov. 8, 2021) (O'Hearn, J.) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). If a damages award, or an equitable remedy, would make the plaintiff whole, irreparable harm does not exist. *Marsellis-Warner Corp. v. Rabens*, 51 F.Supp.2d 508, 528-29 (D.N.J. 1999). Since by definition economic or financial losses can be compensated by damages, they cannot support a preliminary injunction. *See ECRI*, 809 F.2d at 226 ("We have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law."); *Acierno*, 40 F.3d at 653 ("Economic loss does not constitute irreparable harm."). Here, Plaintiffs' asserted injuries are purely economic. Therefore, they can be remedied by damages, and cannot establish irreparable harm.

### 2. Plaintiffs' injury is monetary in nature, despite their effort to mislabel it

The explicit basis for this action is that Defendants "fail[ed] to make monthly payments to ARI" under the Lease Agreement. *See* Moving Br. at 1; *see also* Complaint at ¶ 19 (outlining amounts allegedly owed by Defendants). Though the Motion seeks replevin, the underlying alleged harm is that Plaintiffs have not been paid funds they are owed; the Motion is grounded in a case that is fundamentally about money.[1] *See Isr. Disc. Bank of N.Y. v. H.N. Int'l Group, Inc.*,

---

[1] To avoid any confusion regarding their position, Defendants note that, although (1) they do not dispute that they owe Plaintiffs <u>some</u> amount, and (2) they intend to make Plaintiffs whole as soon as the funds to do so become available, they do not accept Plaintiffs' calculation of the amount owed (Complaint ¶ 19) and reserve all rights to dispute the quantum of damages. Similarly, while Defendants may concede breach of the Lease Agreement due to a few months of nonpayment, they do not concede liability as to all of Plaintiffs' asserted causes of action, e.g. conversion and breach of the covenant of good faith and fair dealing.

No. 16-6258-BRM-LHG, 2016 U.S. Dist. LEXIS 142444, at *13-14 (D.N.J. Oct. 14, 2016). Indeed, Plaintiffs have quantified the exact amount they allege they are owed, further establishing the monetary, compensable nature of their injury.  *Id.*; *Tracey*, 451 F.Supp.3d at 344.

To avoid this fatal defect, Plaintiffs attempt to cast the Motion as being about possession of the Vehicles, not the money owed.  However, this does nothing to alter the monetary nature of their injury.  Plaintiffs assert that they are being deprived of a right to possess the Vehicles, but do not explain why a damages award would not adequately compensate them for that deprivation.

Plaintiffs' only effort to make this crucial showing is to cite to a single, distinguishable, non-binding case, incorrectly contending that this authority establishes that deprivation of the right of possession constitutes irreparable harm.  Moving Br. at 6-7 (citing *Piper v. Gooding & Co., Inc.*, 334 F.Supp.3d 1009, 1023 (D. Ariz. 2018)).  As discussed further below, *Piper* is facially distinguishable, since it concerned unique property, and Plaintiffs' argument overstates any guidance *Piper* offers here.  Generally, deprivation of an abstract right is not inherently irreparable in nature, and can be compensated by money damages.  *See*, *e.g.*, *Peterson v. HVM LLC*, No. 14-1137 (KM)(SCM), 2015 U.S. Dist. LEXIS 75424, at *16-18 (D.N.J. June 11, 2015) (deprivation of alleged contractual right to 30 days' lodging in a hotel was compensable by damages).  Thus, the fact that Plaintiffs frame their alleged harm as being deprivation of the right to possession does not, by itself, establish that Plaintiffs cannot be adequately compensated by monetary damages. Beyond that framing, Plaintiffs have made no concrete showing or non-conclusory argument that their right to possession cannot be compensated with damages.

On the contrary: it is particularly obvious here that Plaintiffs' asserted injury is compensable by damages, because the Vehicles—basic and common vehicles manufactured by well-known car companies (e.g., Nissan, Toyota, Subaru)—are not unique.  Rouhana Aff. ¶ 17;

*see Black Mt. Equities, Inc. v. Pac. Gold Corp.*, No. 2:12-CV-01285 (KM)(CLW), 2012 U.S. Dist. LEXIS 169295, at \*33 (D.N.J. Nov. 27, 2012) (finding no irreparable harm where movant sought turnover of stock shares that were "not unique in kind, quality, or personal association; they are not the stuff of a decree in equity."). As Plaintiffs concede, each and every Vehicle has an ascertainable monetary value. Moving Br. at 8. Consequently, there is no reason Plaintiffs could not be made whole at trial by a damages award for deprivation of the right to possess the Vehicles during the pendency of this suit. Additionally, Defendants' clear representation that they do not intend to alienate or dispose of the Vehicles, is a significant consideration. Rouhana Aff. ¶ 18; *Tannenbaum v. Refocus Eye Health of Cent. Conn., P.C.*, 2024 U.S. Dist. LEXIS 29807, at \*17 (D.N.J. Feb. 21, 2024).

It is also noteworthy that the Lease Agreement provides for calculation of the Vehicles' depreciation. *See* Dkt. 1-1 at 3-6. Likewise, the Vehicles are insured, as contemplated by the Lease Agreement. *See id.* at 12. Such provisions confirm that, to the extent Plaintiffs face any risk from Defendants continuing to operate the Vehicles, this is a monetary risk, covered in monetary terms by the Lease Agreement, and can be compensated by damages after trial.

### 3.   All other relevant factors weigh against a finding of irreparable harm here

It bears emphasis that although Plaintiffs allege several causes of action, the suit—and the Motion in particular—is based on breach of contract, which triggers the application of heightened standards for irreparable harm. It is Defendants' non-payment of amounts due under the Lease Agreement that prompted this suit, and that allegedly entitles Plaintiffs to repossess the Vehicles. *See* Complaint ¶¶ 8-22. Plaintiffs' tort claims are inseparable from the Lease Agreement and Defendants' breach of obligations thereunder.

In sum, the action and the Motion are fundamentally about breach.  The rule in this Circuit is that a breach claim permits irreparable injury in only two situations: "(1) where the subject matter of the contract is of such a special nature [or] peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable." *Longo v. Env'tl Prot. & Improvement Co.*, No. 2:16-cv-09114 (JLL) (JAD), 2017 U.S. Dist. LEXIS 85681, at *32 (D.N.J. June 5, 2017) (quoting *ECRI*, 809 F.2d at 226).  Plaintiffs do not acknowledge, let alone purport to satisfy, these particular conditions; nor could they.  The Lease Agreement's terms and subject matter have no unique aspects that make damages inadequate or impossible to ascertain.

Additionally, it is difficult to credit that Plaintiffs will suffer incurable harm if the immediate turnover relief Plaintiffs seek is not granted, given the time that has passed.  As Plaintiffs themselves emphasize in the Complaint, the payment defaults that are the basis for both Plaintiffs' damages claims and Plaintiffs' demand to repossess the vehicles began months ago.  *See* Complaint at ¶¶ 8-22.  It is true that case law holds that ongoing settlement negotiations can justify delay in seeking injunctive relief.  However, this is not a silver bullet: pointing to settlement negotiations does not preclude scrutiny of the reasons and context for a movant's delay before seeking preliminary relief.  *Stryker Corp. v. Hagag*, No. 21-12499 (ES) (CLW), 2022 U.S. Dist. LEXIS 139226, at *58-59 (D.N.J. June 30, 2022); *Smart Vent Prods. v. Crawl Space Door Sys.*, No. 13-5691 (JBS/KMW), 2016 U.S. Dist. LEXIS 108052, at *35 n.16 (D.N.J. Aug. 15, 2016).  It remains a relevant consideration that Plaintiffs were willing and able to forbear for months before filing suit, and have not explained what has changed such that immediate relief is required now.

No other principle that could justify irreparable harm exists here.  Plaintiffs have not shown that the property is unique.  *Black Mt. Equities*, 2012 U.S. Dist. LEXIS 169295, at *33. Plaintiffs have not shown the Vehicles will be rendered unavailable during the pendency of litigation, or that Defendants will otherwise be unable to make them whole after trial.  *Newton AC/DC Fund L.P. v. Dao*, No. 24-722 (RK) (JBD), 2024 U.S. Dist. LEXIS 24788, at *6-10 (D.N.J. Feb. 13, 2024).  Plaintiffs have not shown that they will suffer reputational harm or other non-compensable business injury if they do not recover possession of the Vehicles.  *Bennington*, 528 F.3d at 178-79; *Acierno*, 40 F.3d at 655 (3d Cir. 1994).  The absence of any of these grounds for relief is glaring.

**B.  Plaintiffs' Conclusory Arguments in Favor of Irreparable Harm Are Meritless**

**1.  Every case cited by Plaintiffs is distinguishable, inapplicable, or both**

None of the cases cited by Plaintiffs helps their argument, let alone cures the flaws identified above.  The only authority Plaintiffs cite for the proposition that being deprived of the right to possess the Vehicles constitutes irreparable harm—their key theory—is *Piper v. Gooding & Co.*, 334 F.Supp.3d 1009 (D. Ariz. 2018).  *Piper* is not binding on this Court, and is facially distinguishable in any event.  The property as to which the *Piper* Court approved a preliminary injunction was a specific, effectively irreplaceable item of sentimental value: a rare, award-winning 1954 Ferrari.  334 F.Supp.3d at 1015.  Moreover, the Court's finding of irreparable harm and granting of injunctive relief was expressly premised on the unusual circumstances of that case, a dispute over proper title to the Ferrari after it had vanished from plaintiff's father's estate after his suspicious death.  *Id.* at 1022-23.  Redbox employees are not driving around the country in

rare, vintage vehicles, and accordingly, to the extent *Piper* has any weight here, denying the Motion would be entirely consistent with it.

Plaintiffs cite *Van Horn, Metz & Co. Inc. v. Crisafulli*, No. 21-1128, 2021 U.S. Dist. LEXIS 182039 (D.N.J. Sept. 23, 2021), for the contention that the defendant's mere "ability" to wrongfully utilize assets belonging to the plaintiff establishes irreparable harm for a "freeze order." Moving Br. at 7. *Van Horn*, too, is distinguishable. In that case, the record showed that specific assets had been embezzled from the plaintiff, and transferred to the (deceased) thief's wife, the defendant, who was believed to have been involved in the original wrongdoing. The basis for a freeze order was not that the defendant had the "ability" to dissipate assets and render them unrecoverable, but that the defendant admitted she had dissipated assets, and her conduct showed she would continue to do so, justifying a freeze. *See* 2021 U.S. Dist. LEXIS 182039, at *11-13. That key criterion does not apply here: Defendants have no intention of transferring the Vehicles (Rouhana Aff. ¶ 18), so there is no need to "freeze" them—a misleading euphemism, since Plaintiffs' request is to bar Defendants from <u>operating</u> the Vehicles, then promptly repossess them. Thus, denying the Motion is fully consistent with *Van Horn*. Moreover, the principle Plaintiffs purport to cite *Van Horn* for—that irreparable harm exists for purposes of "freezing" relief as long as the defendant is even potentially able to misuse assets the plaintiff claims—is not the law. *See, e.g.*, *Newton AC/DC Fund*, 2024 U.S. Dist. LEXIS 24788, at *6-10 (denying motion for TRO that would have imposed a freeze on cryptocurrency transactions, due to failure to show imminent dissipation or other irreparable harm).

Next, Plaintiffs cite *United Steelworkers v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir. 1979), for the statement that "[t]he fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury." This statement is true, but Plaintiffs use it

as a red herring: it has no bearing on the Motion.  The dispositive rule, which Plaintiffs cannot avoid and which *United Steelworkers* does not contradict, is that an economic, monetary injury is compensable by damages and cannot constitute irreparable harm.  *Acierno*, 40 F.3d at 653.  In other words, the Motion fails, not because "the payment of monies is involved" in the case, but because Plaintiffs have not shown that their injuries cannot be compensated by damages.

Finally, Plaintiffs cite a string of cases for the point that loss of goodwill, loss of trade, or loss of reputation can constitute irreparable harm.  *See* Moving Br. at 8.  Defendants do not dispute this rule, but again, it is of no moment: Plaintiffs have failed to allege or prove any of these types of injuries.  Indeed, none of them is mentioned anywhere else in the brief.  Plaintiffs merely assert that  "[p]reventing ARI from recovering its vehicles will hinder its ability to operate as it normally does[.]"  *Id.* at 8.  This assertion is vague and unclear; supported by no affidavit or record evidence; and suggests monetary harm rather than loss of reputation, good will, or some other irreparable injury.  The Court of Appeals rejected similar efforts to relabel ordinary, monetary business injuries as irreparable harm such as loss of reputation in *Bennington*.  *See* 528 F.3d at 178-180.  Likewise, the Court of Appeals has rejected claims that general disruption to the movant's business constitutes irreparable harm even where the movant can identify a concrete theory for why that disruption might occur—which Plaintiffs here have not.  *See Acierno*, 40 F.3d at 655.

### 2.    Plaintiffs deceptively misrepresent the intended relief as preserving the status quo, when the injunction would radically change the status quo

Plaintiffs repeatedly mischaracterize the relief they seek, in a rhetorical sleight-of-hand intended to make that relief seem less drastic than it is.  When it suits them, Plaintiffs contend they are merely maintaining the status quo.  *See, e.g.*, Moving Br. at 1 ("Plaintiffs . . . ask this Court to issue an emergency restraining order to preserve the status quo"), 4 ("the Court should issue a

TRO and a preliminary injunction to preserve the status quo"). But in reality, Plaintiffs' desired relief would radically <u>alter</u> the status quo.[2]

Even Plaintiffs' "freezing" TRO is mislabeled, and would upset the status quo. Plaintiffs' requested relief would not only bar Defendants from transferring the Vehicles: it would (inexplicably) bar Defendants from using them at all. *See* Dkt. 2-1 (proposed order to show cause) at 3. The Vehicles are necessary to conduct Redbox's daily business, and Defendants have been using them for that purpose at all times relevant to this action. Rouhana Aff. ¶¶ 7, 13-15. Enjoining Defendants from operating the Vehicles would serve no useful purpose; it would be purely punitive. Moreover, it would cause far-ranging and lasting harm, and would be far more disruptive than simply forbidding alienation of the Vehicles. *See Atlantic Coast Demolition & Recycling v. Board of Chosen Freeholders*, 893 F.Supp. 301, 314 (D.N.J. 1995) ("This injunction would destroy, rather than maintain, the status quo, and injunctive relief is therefore inappropriate . . . ."). In practical terms, Plaintiffs' desired TRO is an order for Redbox to stop operating, falsely labeled as a mere "freeze."[3]

Plaintiffs then ask the Court to disrupt the status quo even further. At a preliminary injunction hearing, Plaintiffs request that the Court order the immediate seizure and repossession of all of the 418 Vehicles at issue. *See* Dkt. 2-1 at 2. A sweeping mandatory injunction of this type is "particularly disfavored" by the courts. *Dorsey v. Black Pearl Books*, No. 06-2940 (JAG),

---

[2] Notably, the mask slips at times—Plaintiffs admit they ask the Court to "establish a" status quo, not preserve the status quo. *See* Moving Br. at 10-11 ("all ARI requests of this Court is to equitably establish a status quo . . . .").

[3] The nature of the TRO makes clear that, even more so than the turnover order Plaintiffs seek, it is improperly aimed at a purely monetary injury. There is no indication Defendants will dispose of the Vehicles if this TRO is not granted (Rouhana Aff. ¶ 18), and the TRO would not return possession of the Vehicles to Plaintiffs, which is the harm that Plaintiffs primarily attempt to rely on in seeking to show irreparable injury. *See* Moving Br. at 4-8. Thus, the only harm the TRO could possibly mitigate is diminution of the vehicles' value as they are operated. *See id.* at 4 (asserting that Plaintiffs will suffer "loss of value for the Vehicles" if relief is not granted). Such lost value is undeniably a monetary harm, and thus the TRO lacks the irreparable injury element necessary for injunctive relief.

2006 U.S. Dist. LEXIS 83093, at *37 (D.N.J. Nov. 14, 2006). Moreover, since the Complaint seeks a permanent injunction on exactly the same terms as the preliminary relief Plaintiffs seek in the Motion (*see* Complaint at p. 16), the preliminary injunction Plaintiffs desire would improperly grant ultimate relief. *Atlantic Coast*, 893 F.Supp. at 314 ("Courts have long held that preliminary relief should not give the moving party essentially all the relief it seeks on the merits."). As noted by the Court in *Black Mountain*, heightened scrutiny applies to injunctive relief that (1) disturbs the status quo, (2) is mandatory rather than prohibitory, or (3) affords the movant substantially all the relief he would receive if he prevailed at trial. 2012 U.S. Dist. LEXIS 169295, at *12. The relief Plaintiffs seek is all three—a clear testament to how extreme that relief is, and the compelling reasons not to grant it.

### C.  In Sum, Plaintiffs Can—and Will—Be Made Whole Monetarily

For all the foregoing reasons, Plaintiffs have failed to carry their heavy burden to establish irreparable harm sufficient to justify mandatory relief disturbing the status quo—both the "freezing" relief they seek via TRO, or the turnover they seek via preliminary injunction and replevin. "This is a case about money, and monetary damages are available." *Isr. Disc. Bank.* at *13. By itself, lack of irreparable harm compels denial of the Motion. *Newton AC/DC Fund*, 2024 U.S. Dist. LEXIS 24788, at *6 (citing *Instant Air Freight*, 882 F.2d at 800).

Indeed, Defendants do not dispute that they owe Plaintiffs money—though there is significant question about how much, which will be addressed in the course of the litigation—and have every intention of making Plaintiffs whole. Defendants have repeatedly made clear to Plaintiffs that they intend to pay the correct amount owed, as soon as Defendants obtain the financing necessary to do so.[4] Rouhana Aff. ¶ 11. As plainly stated in the Rouhana Affidavit,

---

[4] Fed. R. Evid. 408 precludes the admission of settlement promises or offers, or statements in settlement negotiations, "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement

Redbox recognizes that it has fallen behind on a few months of lease payments, and anticipates imminent receipt of the funding to repay the arrears owed to Plaintiffs.  *Id*. ¶¶ 10-12.  On every level, there is no genuine need for the sweeping, punitive, and disruptive injunction the Motion seeks.

## II.    The Balance of Equities and Public Interest Strongly Favor Denying the Motion, Because It Will Cause Grave and Far-Reaching Harm if Granted

Irreparable harm is a 'gateway' element: courts only proceed to consider the balance of equities and public interest if both irreparable harm and likelihood of success on the merits are sufficiently shown.  *Tracey*, 451 F.Supp.3d at 341 (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)).   Nevertheless, Defendants address the non-gateway elements of preliminary relief in the interest of thoroughness, and as alternative grounds for denial of the Motion.

Plaintiffs have fallen far short of their burden to establish that granting the Motion would be favored by the equities, or beneficial to the public.  *NAACP v. N. Hudson Reg'l Fire & Rescue*, 707 F.Supp.2d 520, 545 (D.N.J. 2010) ("The Court cannot grant the Plaintiffs' preliminary relief when it will result in greater harm to a non-moving party.").  On the contrary: granting the Motion would wreak appalling damage on Defendants, likely putting one or both of them out of business, and certainly costing hundreds of jobs.  Rouhana Aff. ¶¶ 14-15.

The balance of equities cannot favor the movant where granting the requested preliminary injunction would put the defendant out of business.  *Isr. Disc. Bank*, 2016 U.S. Dist. LEXIS 142444, at *14-15; *Dorsey*, 2006 U.S. Dist. LEXIS 83093, at *38.  That is the case here.  As the Rouhana Affidavit attests, granting the Motion would inflict far-reaching and permanent damage.

---

or a contradiction[.]"  Noting the fact of Defendants' compromise offers, purely for the purpose of showing that Defendants <u>have</u> offered to make Plaintiffs whole, does not go to the validity or amount of Plaintiffs' claim, nor any impeachment purpose, and is not barred by Rule 408.

Redbox would be crippled at a stroke, since it relies on the Vehicles for day-to-day operations. Rouhana Aff. ¶¶ 13-14.  Thus, Redbox would almost certainly be forced into bankruptcy, unable to operate the kiosks that it relies on for income.  *Id.* ¶ 15.  Hundreds of layoffs would be inevitable, depriving those employees of their livelihoods.  *Id.*  The precise harm to CSSE is more difficult to predict, but would certainly be severe, as Redbox generates significant cash flow for CSSE.  *Id.* ¶¶ 5, 16.  Should the Court grant Plaintiffs' requested relief, the harm and damage caused to Defendants will far exceed the amount Plaintiffs seek from Defendants here.  Causing such damage is certainly not in the public interest.  In all, a weighing of the equities falls in favor of Defendants and strongly supports the rejection of the relief Plaintiffs seek.

Moreover, the relief Plaintiffs seek in the Motion, and the resultant harm to Defendants, are avoidable: as noted, in a matter of weeks, Defendants will close deals that will free up significant cash and enable them to make Plaintiffs whole.  Rouhana Aff. ¶ 11.  Granting the Motion is particularly inequitable given that its purpose would be obviated, and its severe downsides avoided, with the passage of a short time.

Conversely, in their favor, Plaintiffs merely point to generalized interests in vindicating property rights and contractual entitlements.  Moving Br. at 10-11.  These are legitimate concerns, but abstract.  Plaintiffs make no effort to show that in <u>this</u> case, granting <u>this</u> Motion will do more good than harm, as is their burden.  *Isr. Disc. Bank*, 2016 U.S. Dist. LEXIS 142444, at *8-9 ("IDB (as the movant) bears the burden of showing all four factors weigh in favor of granting the injunction").  Indeed, Plaintiffs do not even engage with the grave consequences of the turnover order they seek.  Given Plaintiffs' conclusory and non-specific effort to establish that the equities and the public interest weigh in their favor, the concrete and severe harm that Defendants will suffer if the Motion is granted defeats application of these elements for injunctive relief.

### III.    Plaintiffs Are Not Entitled to Replevin under New Jersey Law

For all the reasons discussed *supra*, Plaintiffs are not entitled to a preliminary injunction under the federal Rule 65 framework.  Plaintiffs additionally seek preliminary relief, with the same effect, in support of their replevin claim under N.J. Stat. Ann. § 2B:50-2(a).  However, relief under New Jersey state law is equally inappropriate here.

First, the application of N.J. Stat. Ann. § 2B:50-2(a) is conditioned on Fed. R. Civ. P. 64, which permits federal courts to employ every remedy under the forum state's law that "provides for seizing a person or property to secure satisfaction of the potential judgment."  However, the writ of replevin Plaintiffs seek would not merely secure future satisfaction of a judgment, but would give Plaintiffs outright possession of the entire fleet of Vehicles, granting the ultimate relief sought.  Thus, it is dubious at best whether § 2B:50-2(a) applies at all.  *See Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*, 24 F.4th 242, 250 (3d Cir. 2022).

Second, even if Rule 64(a) permits the use of state law to obtain ultimate relief, Plaintiffs should not be permitted to plead around the fatal defects in the Motion under the Rule 65 standard merely by couching a request for identical relief in terms of state law.  Plaintiffs have utterly failed to establish irreparable harm, balance of the equities, and public interest favoring entry of a preliminary injunction.  They cannot circumvent these well-established requirements by making an end-run around Rule 65 and invoking § 2B:50-2(a) as an alternative.

*Yamaha Motor Fin. Cop., U.S.A. v. ML Country Club LLC*, No. 1: 20-cv-04696-NLH-JS, 2020 U.S. Dist. LEXIS 234232 (D.N.J. Dec. 14, 2020), is fully consistent with Defendants' position.  In that case, which approved a plaintiff's motion for writ of replevin under New Jersey state law, seeking pre-judgment possession of leased golf carts, the plaintiff had <u>only</u> moved for a writ of replevin, without seeking relief under federal law.  The defendant argued that the motion was in effect seeking a preliminary injunction under Rule 65, and thus must be analyzed under the

Rule 65 framework, but the Court disagreed.  Crucially, the Court based its conclusion on the ground that the plaintiff had exclusively moved for state-law remedies, "not accompanied by any motion for a preliminary injunction", distinguishing that case from cases like *VW Credit, Inc. v. CTE2, LLC*, No. 2:19-CV-19523-CCC-ESK, 2019 U.S. Dist. LEXIS 210548 (D.N.J. Dec. 6, 2019) and *Isr. Disc. Bank of N.Y.*, 2016 U.S. Dist. LEXIS 142444, in which the movants had framed their motions as partly or wholly based on federal law.  *See* 2020 U.S. Dist. LEXIS 234232, at *4-5.

Here, unlike the movant in *Yamaha*, Plaintiffs have invoked Rule 65 as well as New Jersey state law.  Thus, under the reasoning of *Yamaha*, their demand for injunctive relief under mixed federal and state law should be analyzed under Rule 65.

## IV.    The Significant Bond Required Further Counsels Against Granting the Motion

Finally, Plaintiffs contend that the requirement of a bond should be waived.  However, conditions in which a bond is not required "are so rare that the requirement is almost mandatory." *Peoplestrategy, Inc. v. Lively Emplr. Servs.*, No. 3:20-cv-02640-BRM-DEA, 2020 U.S. Dist. LEXIS 171475, at *27) (D.N.J. Aug. 28, 2020) (quoting *Scanvec Amiable Ltd. v. Chang*, 80 F. App'x 171, 175 (3d Cir. 2003)).  Waiver requires specific findings by the Court to the effect that complying with the preliminary injunction offers no risk of monetary harm to the defendant.  *Id.* at *27.  Even a slight chance that Defendants would prevail at trial on the issues underlying the Motion would preclude waiver of a bond under this standard, and while Defendants concede they owe Plaintiffs some amount, how much remains in genuine dispute.  Rouhana Aff. ¶ 10.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully submit that the Motion should be denied in its entirety.

Dated:  May 20, 2024
         New York, New York

                                                    **REED SMITH LLP**

                                                    /s/ Gregory D. Speier
                                                       Gregory D. Speier
                                                    506 Carnegie Center
     Suite 300
     Princeton, NJ 08540
     Tel:  609-987-0050
     Fax:  609-951-0824
     Email: gspeier@reedsmith.com

     John P. Kennedy (*pro hac vice* forthcoming)
     599 Lexington Avenue
     22nd Floor
     New York, NY 10022
     Tel:  212-521-5400
     Fax:  212-521-5450
     Email: jkennedy@reedsmith.com

     *Counsel for Defendants*